IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 18-cv-02741-JLK

ERIC MAGNE,

      Plaintiff,

v.

CLEAR CREEK COUNTY SHERIFF RICK ALBERS, in his official capacity,
MICHAEL HANSEN, Clear Creek County Deputy Sheriff, in his individual capacity,

      Defendants.

---

## MOTION FOR SUMMARY JUDGMENT

      Defendants, by undersigned counsel, request summary judgment under Fed. R. Civ. P. 56:

### CERTIFICATION

      The undersigned conferred with plaintiff's attorneys regarding this motion and understands that plaintiff is opposed.

### I.      INTRODUCTION

      Plaintiff's lawsuit makes claims under 42 U.S.C. § 1983 against Deputy Hansen and Sheriff Albers. Plaintiff's claims are based on two events during his booking in the early morning hours of October 29, 2016.

      The first involved another agency officer, Jon Geiger, who had arrested Magne for DUI. When Hansen was out of the room, Geiger put Magne in an arm lock and held him against a wall. Hansen did not see the beginning of this or know the reason. Geiger released Magne from

the hold seven seconds after Hansen arrived back at the room and five seconds after Hansen positioned himself at the holding cell door.

The second incident involved Deputy Hansen during fingerprinting. After rubbing Hansen's shoulder, Magne reached for Hansen's neck. Hansen responded by attempting a takedown. Unintended by Hansen, Magne's head hit a door jam on the way down, causing injury.

With discovery now concluded, Deputy Hansen requests summary judgment based on qualified immunity. He submits for the Court's determination that his conduct did not violate plaintiff's constitutional rights and that clearly established law did not exist such that a reasonable officer in his position would have known that what he did would constitute a violation.

Sheriff Albers, who plaintiff has sued in official capacity, requests summary judgment because plaintiff's constitutional rights were not violated, nor was there an official policy, custom, or practice that was the moving force behind a constitutional violation.

## II.   STATEMENT OF UNDISPUTED MATERIAL FACTS[1]

1.    Michael Hansen was employed as a detentions deputy at Clear Creek County from September 2013 to December 2016. Ex. A, Hansen Depo. [Excerpt] 18:3-7.

2.    Rick Albers has been the Clear Creek County Sheriff since 2015. Ex. B, Snelling Depo. [Excerpt] 5:11-15.

3.    In the early morning hours of October 29, 2016, Jon Geiger, a Georgetown police

---

[1] These facts are presented as undisputed in order to make the case for summary judgment, but to the extent they may support plaintiff's claims outside of this motion, they are not admitted and defendants dispute that they support any liability under § 1983.

officer, arrested Eric Magne on suspicion of DUI, DWAI, and speeding. Ex. C, Intake Form.

4. Officer Geiger transported Magne to Clear Creek County Jail where he arrived at approximately 12:50 a.m. on October 29, 2016. Ex. C, Intake Form; Ex. D, Incident Rept. at 1.

5. Magne appeared intoxicated. Ex. A, Hansen Depo. 137:23 – 138:4.

6. Deputy Hansen obtained a preliminary breath test sample from Magne, which reported a BAC of 0.135. Ex. D, Incident Rept. at 1; Ex. E, Magne Depo. [Excerpt] 110:19-25.

7. Magne was verbally aggressive and in response to booking questions, repeated "Six-Four-Five" in reference to his Sixth, Fourth, and Fifth Amendment rights. Ex. A, Hansen Depo. 124:17-25; Ex. D, Incident Rept. at 2; Ex. E, Magne Depo. 121:20-24, 126:1-2, 8-15.

8. Deputy Hansen "left Geiger with Magne, to go get criminal history forms in dispatch." Ex. D, Incident Rept. at 1. Deputy Hansen can be seen exiting the room where the camera is labeled "Booking" in a still frame from jail video. Ex. F, Booking Camera #110 at 1:03:51[2].

---

[2] The time referred to corresponds to the time stamp on the video.



9.    After Deputy Hansen left, Magne went into the holding cell and began forcefully opening and closing the cell door, producing loud banging. Ex. F, Booking Camera #110 at 1:07:30-1:07:40. The banging noise was loud enough to be heard a floor away. Ex. A, Hansen Depo. 108:9-10.







10.     Geiger took Magne out of the cell and placed him against the wall. This occurred

while Deputy Hansen was out of the room, having gone upstairs to get forms. Ex. A, Hansen

Depo. 101:5-15; Ex. F, Booking Camera #110 at 1:07:45-1:07:52.





11.     Deputy Hansen "heard a banging noise, and went back to intake." Ex. D, Incident Rept. at 2, *see also* Ex. A, Hansen Depo. 101:1-4; Ex. F, Booking Camera #110 at 1:08:07.



12.     Deputy Hansen did not know why Geiger had Magne against the wall. Ex. A,

Hansen Depo. 100:16-20. Deputy Hansen did not observe excessive use of force based on what

he saw at the time he entered intake. *Id.* at 104:20-25.

13.     Deputy Hansen proceeded into the room and positioned himself by the cell door.

Ex. F, Booking Camera #110 at 1:08:09.



14.    Geiger released Magne from the wall seven seconds after Deputy Hansen entered the room and five seconds after Hansen got to the holding cell door. Ex. F, Booking Camera #110 at 1:08:08-1:08:14.



15.    Three more deputies entered the room. Ex. F, Booking Camera #110 at 1:08:40-

1:08:58, Ex. G, Maldonado Narrative at 1.



16.    Magne said that he wanted to return to the holding cell and reentered the cell after

one of the deputies opened the door. Ex. A, Hansen Depo. 140:14-18; Ex E, Magne Depo.

154:19-23; Ex. G, Maldonado Narrative at 1; Ex. F, Booking Camera #110 at 1:09:29-35.





17.     At approximately 2:06 a.m., Deputy Hansen had Magne come out of the holding

cell in order to go to fingerprinting. Ex. D, Incident Rept. at 2; Ex. F, Booking Camera #110 at

2:06:27; Ex. H, Intake Camera #58 at 2:06:24; Ex. I, Intake Camera #189 at 2:06:41.











18.     At the fingerprinting machine, Magne held his left hand in the air while Deputy Hansen fingerprinted Magne's right hand. Ex. D, Incident Rept. at 2; Ex. H, Intake Camera #58 at 2:06:40-2:06:50; Ex. I, Intake Camera #189 at 2:06:58-2:07:07.





19.     When Deputy Hansen began fingerprinting Magne's left hand, Magne began

rubbing Deputy Hansen's right shoulder patch. Ex. D, Incident Rept. at 2; Ex. H, Intake Camera

#58 at 2:07:00-2:07:09; Ex. I, Intake Camera #189 at 2:07:16-2:07:27.





20.     Deputy Hansen gave verbal instructions for Magne to put his hand down, but

Magne did not stop rubbing Deputy Hansen's shoulder. Ex. A, Hansen Depo. 151:19-20; Ex. D,

Incident Rept. at 2.

21.     Magne then reached across Deputy Hansen's chest towards his neck. Ex. A,

Hansen Depo. 33:15-18; Ex. H, Intake Camera #58 at 2:07:11; Ex. I, Intake Camera #189 at

2:07:28.





22.     Deputy Hansen believed Magne's movement to be "an assaultive action with the

intent to cause bodily harm." Ex. A, Hansen Depo. 34:10-13.

23.     In response, Deputy Hansen executed an arm bar takedown. Ex. A, Hansen Depo.

31:10-12; Ex. D, Incident Rept. at 2; Ex. H, Intake Camera #58 at 2:07:11-2:07:13; Ex. I, Intake

Camera #189 at 2:07:28-2:07:31.



24.    During the takedown, Magne's head hit the metal door frame. Ex. A, Hansen

Depo. 167:22 – 168:5; Ex. D, Incident Rept. at 2; Ex. H, Intake Camera #58 at 2:07:12; Ex. I,

Intake Camera #189 at 2:07:30.





25.     Deputy Hansen did not intend for Magne to contact the door. Ex. A, Hansen

Depo. 167:22 – 168:5; 177:2-17; 178:11-13.

26.     When Magne was on the floor following the takedown, Deputy Hansen held him

in place until three other deputies arrived in the room. Ex. A, Hansen Depo. 172:23 – 173:6; Ex.

I, Intake Camera #189 at 2:07:34-2:08:14.





27.     Once Deputy Hansen saw that Magne was bleeding, he told the control technician

to call an ambulance. Ex. A, Hansen Depo. 171:9-21.; Ex. D, Incident Rept. at 2;

28.     At approximately 2:37 a.m., emergency services arrived with an ambulance. Ex. D, Incident Rept. at 2.

29.     Clear Creek County Detentions had a use of force policy in effect on October 29, 2017. Ex. J, Detentions Policy 8.01.

30.     This policy provides, in part:

> **Assaultive & Threat to Bodily Harm** The inmate is perceived by the deputy to be assaultive – and a threat to bodily harm. The appropriate level of response is immediate defensive tactics. The original assaultive behavior may have been directed at a fellow inmate, another victim, or the deputy. Defensive tactics may include impact weapons, hard fist, or any other reasonable means available and at hand to stop the aggression, defend against attack, and bring the inmate into compliance. It is contemplated and understood that reasonable deputies, while employing defensive tactics, may cause injury, serious injury, and in some isolated instances, death without intending such consequences.

Ex. J, Detentions Policy 8.01 at 4-5.

31.     Deputy Hansen received training at Clear Creek County three to four times a year, which included training on the use of force. Ex. A, Hansen Depo. 24:14-22; Ex. B, Snelling Depo. 64:1-8.

32.     The District Attorney's Office for the Fifth Judicial District investigated. Ex. K, Investigative Rept. The District Attorney's Office determined that "the force used by Deputy Hansen was reasonable and appropriate and the injury to Mr. Magne was incidental and not purposeful." Ex. K at 5-6.

33.     Sheriff Albers reviewed video of the use of force, which showed that "Magne's hand was across Deputy Hansen's throat" and that "Deputy Hansen responded to what he

perceived was a threat" by attempting a takedown in self-defense. Ex. B, Snelling Depo. 38:1-2, 39:2-4.

34.     Sheriff Albers determined that Deputy Hansen's conduct was "justified," and was compliant with the training and the policies of the Sheriff's Office. Ex. B, Snelling Depo. 35:16-20, 36:1-8, 37:1-13.

35.     Going back to January 2009, only one other complaint alleged excessive force at the Clear Creek County Jail. Ex. B, Snelling Depo. 57:25 – 58:5. A federal inmate alleged that he was injured when two deputies covered him to prevent additional assault after he was assaulted by another inmate. *Id.* at 58:9-15. The complaint was dismissed. *Id.* at 58:10-19.

### III.    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the "responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A material fact is one with the potential to affect the outcome of a genuine issue. *Ulissey v. Shvartsman*, 61 F.3d 805, 808 (10th Cir. 1995). An issue is genuine if a reasonable fact finder could find in favor of the nonmoving party. *Adams v. Am. Guarantee & Liab. Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000).

On a motion for summary judgment, the "nonmoving party is entitled to all reasonable inferences from the record; but if the nonmovant bears the burden of persuasion on a claim at trial, summary judgment may be warranted if the movant points out a lack of evidence to support

an essential element of that claim and the nonmovant cannot identify specific facts that would create a genuine issue." *Patel v. Hall*, 849 F.3d 970, 978 (10th Cir. 2017) (quotations omitted). Further, "[u]nsubstantiated allegations carry no probative weight in summary judgment proceedings." *Cardoso v. Calbone*, 490 F.3d 1194, 1197 (10th Cir. 2007) (quotations omitted).

## IV.     ARGUMENT

### A.     Deputy Hansen requests summary judgment based on qualified immunity.

Qualified immunity "shields officials from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (citing *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). "When a defendant asserts qualified immunity at summary judgment, the burden shifts to the plaintiff" to demonstrate a constitutional violation. *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009). In evaluating whether the defendant violated a constitutional right, the court conducts a two-pronged test asking whether "(1) the defendant violated [the plaintiff's] constitutional or statutory rights and (2) [whether] the right was clearly established at the time of the alleged unlawful activity." *Castillo v. Day*, 790 F.3d 1013, 1019 (10th Cir. 2015). A right is clearly established "when a Supreme Court or Tenth Circuit decision is on point, or if the clearly established weight of authority from other courts shows that the right must be as [the] plaintiff maintains." *PJ ex rel. Jensen v. Wagner*, 603 F.3d 1182, 1197-98 (10th Cir. 2010).

When evaluating these prongs, "[t]he judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223 (2009). If the plaintiff fails to

satisfy either prong, the defendant is entitled to qualified immunity. *Estate of Reat v. Rodriguez*, 824 F.3d 960, 964 (10th Cir. 2016). Here, both prongs support qualified immunity for Deputy Hansen.

### 1.  Deputy Hansen did not violate plaintiff's Fourteenth Amendment rights.

Deputy Hansen did not fail to intervene against another officer's use of force or use excessive force against plaintiff.

### a.  Deputy Hansen did not have a reasonable opportunity to observe or fail to intervene.

Even if an officer does not personally take affirmative action to violate a plaintiff's rights, "[a]n officer who fails to intervene to prevent a fellow officer's excessive use of force may be liable under § 1983." *Fogarty v. Gallegos*, 523 F.3d 1147, 1162 (10th Cir. 2008). The defendant officer "must have had a realistic opportunity to intervene to prevent harm from occurring." *Vondrak v. City of Las Cruces¸* 535 F.3d 1198, 1210 (10th Cir. 2008) (citing *Anderson v. Branen*, 17 F.3d 552, 557 (2nd Cir. 1994)).

Deputy Hansen was not present when the Georgetown police officer removed plaintiff from the holding cell and placed him against the wall. Fact No. 10. Hansen was upstairs. Upon hearing the noise made by the holding cell door banging, Hansen got back downstairs to intake in approximately 20 seconds. Fact No. 11. When he entered the room, Deputy Hansen did not know what preceded and could not say that an excessive use of force was in progress. Fact No.12. Only seven seconds elapsed between the time Deputy Hansen entered the room and the time Geiger released Magne from the hold against the wall. Fact. Nos. 11, 14.

Deputy Hansen did not have a reasonable opportunity to intervene. The Georgetown police officer acted before Hansen arrived back at intake. Once Hansen got back to intake, it was

a matter of only seconds before the Georgetown officer released Magne from the hold. Case law indicates that reasonable opportunity to intervene must be a period of at least multiple minutes. *See, e.g., Estate of Booker v. Gomez*, 745 F.3d 405, 422-23 (10th Cir. 2014) (defendant deputies were "present and observed the entire use of force over a two-to-three minute period."); *Fogarty v. Gallegos*, 523 F.3d 1147 (10th Cir. 2008) (defendant officer present during allegedly unconstitutional arrest which lasted "between three and five minutes").

Here, Deputy Hansen witnessed Geiger's use of force not for minutes, but rather for mere seconds Fact Nos. 11-14. Not having been present when Geiger's use of force began, Hansen did not have the opportunity to prevent Geiger's use of force in the beginning. Since it was a matter of seconds between Hansen's arrival back at intake and Geiger's releasing Magne from the hold, Hansen did not have a realistic opportunity to intervene before Geiger's use of force stopped. Not being in the room when the Georgetown police officer began using force, Hansen did not have the necessary information to determine whether the use of force was excessive relative to the circumstances.

### b. Deputy Hansen did not use excessive force.

The Fourteenth Amendment "protects a pretrial detainee from the use of excessive force that amounts to punishment." *Kingsley v. Hendrickson*, 576 U.S. 389, 396 (2015). A pretrial detainee alleging excessive use of force must show that the force used was objectively unreasonable. *Id.* The Supreme Court has noted that potentially relevant considerations in determining whether the force used was reasonable include:

> [T]he relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably

> perceived by the officer; and whether the plaintiff was actively
> resisting.

*Id.* at 397. Objective reasonableness "turns on the facts and circumstances of each particular case" and must be evaluated "from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." *Id.* (citing *Graham v. Connor*, 490 U.S. 386, 396 (1989)). A court's analysis of reasonableness also requires "appropriately deferring to 'policies and practices that in the judgment' of jail officials 'are needed to preserve internal order and discipline and to maintain institutional security.'" *Id.* at 403 (quoting *Bell v. Wolfish,* 441 U.S. 520, 547 (1979)). Moreover, the Supreme Court has noted that "liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process." *County of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998). For example, "if an officer's Taser goes off by accident or if an officer unintentionally trips and falls on a detainee, causing him harm, the pretrial detainee cannot prevail on an excessive force claim." *Kingsley*, 576 U.S. at 396.

With respect to the factors articulated in *Kingsley*, Hansen's conduct was not objectively unreasonable and therefore did not amount to excessive force. Even if one viewing the security footage with the benefit of hindsight believes that Deputy Hansen could have acted differently to prevent inadvertent injury, this is not the standard. *See Kingsley*, 576 U.S. at 397. From Deputy Hansen's perspective at the time, he had a reasonable belief that plaintiff presented an imminent risk of bodily harm. Fact Nos. 21-22. Plaintiff had entered the jail significantly intoxicated with a BAC of 0.135, was uncooperative in intake, and had already required a response from multiple deputies to calm him. *See* Fact Nos. 6, 7, 9-15. In the fingerprinting area, plaintiff's arms were raised while Deputy Hansen was fingerprinting him, plaintiff continued touching Deputy

Hansen's shoulder patch despite requests to stop, and he suddenly reached towards Deputy Hansen's neck. *See* Fact Nos. 18-21.

Deputy Hansen was forced to make a split second decision in responding to what he believed to be plaintiff's intent to cause bodily harm. Fact No. 22 He acted in accordance with the Sheriff's Office use-of-force policy. Fact Nos. 33-34. Deputy Hansen did not intend for plaintiff's head to make contact with the door frame, and negligent harm is below the threshold of an excessive force claim. *County of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998). Deputy Hansen held plaintiff down for less than a minute to ensure control until additional deputies arrived. Fact No. 26.

As soon as Deputy Hansen realized plaintiff was bleeding, he instructed the control technician to call an ambulance. Fact No. 27. Once plaintiff was handcuffed and therefore under control, Deputy Hansen ceased all application of force and waited for emergency services to arrive. Fact No. 28. Deputy Hansen used only the amount of force necessarily proportional to the security threat he perceived. Taking the undisputed material facts in the light most favorable to plaintiff, and with the documented video evidence, Deputy Hansen's use of force here was not objectively unreasonable.

**2. Whether or not defendant Hansen violated plaintiff's civil rights, a reasonable official in Hansen's position would not have known his conduct would violate plaintiff's civil rights.**

A right is considered clearly established when "the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S.635, 640 (1987)) (internal quotation marks omitted). The Tenth Circuit has adopted a sliding

scale to assess whether the law is clearly established based on the conduct. *Casey v. City of Federal Heights*¸ 509 F.3d 1278, 1284 (10th Cir. 2007). A lesser degree of specificity is required from prior case law where the conduct is obviously egregious. *Pierce v. Gilchrist*, 359 F.3d 1279 (10th Cir. 2004). Excessive force claims are regulated by the Fourth Amendment. *Graham*, 490 U.S. at 395.

With respect to plaintiff's claim against Deputy Hansen for failure to intervene, there is no case from the Supreme Court or the Tenth Circuit indicating that a pretrial detainee's rights are violated when an officer does not instantaneously intervene to stop an excessive use of force which he had no opportunity to prevent. No case from the Tenth Circuit or the Supreme Court finding a triable issue for failure to intervene presents a sufficiently similar set of facts. All cases show excessive force applied over multiple minutes with the non-intervening officer present for the entire situation. *See e.g., Estate of Booker v. Gomez*, 745 F.3d 405, 422-23 (10th Cir. 2014) (defendant deputies were "present and observed the entire use of force over a two-to-three minute period"); *Fogarty v. Gallegos*, 523 F.3d 1147 (10th Cir. 2008) (defendant officer present during allegedly unconstitutional arrest which lasted "between three and five minutes").

Similarly, no Supreme Court or Tenth Circuit case holds that an arrestee's civil rights are violated when a deputy uses reasonable force in light of a perceived threat. It is only established that a pretrial detainee has the right to be free from the use of force that is objectively unreasonable under the circumstances. *See Kingsley*¸ 576 U.S. at 396. Cases from other jurisdictions with similar facts have found that officers did not use excessive force. *See, e.g. Hedgpeth v. Rahim*, 893 F.3d 802 (D.C.Cir. 2018) (upholding qualified immunity for officer who caused arrestee to hit head on window while executing takedown maneuver); *Griffin v. Hadrick*¸

604 F.3d 949 (6th Cir. 2010) (holding that detainee's broken leg did not indicate that officer used excessive force in executing a leg-sweep in accordance with policy); *McCroden v. County of Volusia*, 724 Fed. Appx. 768 (11th Cir. 2018) (takedown resulting in detainee's broken hip was consistent with county's use of force policy, had never previously resulted in broken bones, and thus officers had no reason to think it was unconstitutional).

On Deputy Hansen's behalf, it is submitted that it was not clearly established in October 2016 that his takedown maneuver in response to Magne's reaching for his neck would violate Magne's civil rights.

**B.      Sheriff Albers is not liable in his official capacity.**

A § 1983 claim may be asserted against a municipality if the plaintiff shows that the alleged violation of his civil rights resulted from a municipal policy or custom. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-94 (1978); *Hinton v. City of Elwood*, 997 F.2d 774, 782 (10th Cir. 1993). Municipalities are not liable for the constitutional torts of their employees on a theory of *respondeat superior*; they "are only liable for constitutional violations that they caused." *Dodds v. Richardson*, 614 F.3d 1185, 1209 (10th Cir. 2010). The plaintiff must establish "(1) that a municipal employee committed a constitutional violation, and (2) that a municipal policy or custom was the moving force behind the constitutional deprivation." *Myers v. Okla. Cnty. Bd. of Cnty. Comm'rs*, 151 F.3d 1313, 1316 (10th Cir. 1998).

Here, Deputy Hansen did not violate Magne's rights. Plaintiff's claim against Sheriff Albers in his official capacity accordingly fails as a matter of law because a "municipality may not be held liable where there was no underlying constitutional violation by any of its officers." *Hinton*, 997 F.2d at 782.

Nor does the evidence establish that any municipal policy or custom caused the constitutional deprivation he alleges. A municipal policy or custom may arise from any of the following:

> (1) a formal regulation or policy statement; (2) an informal custom amoun[ting] to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.

*Bryson v. City of Oklahoma City*, 627 F.3d 784, 788 (10th Cir. 2010) (internal quotation marks and citation omitted). The formal written policy of the Sheriff's Office explicitly provides that deputies are to "only use the amount of force reasonably necessary to bring inmates into compliance, protect life, and protect the integrity of the facility." *See* Ex. I, Detentions Policy 8.01 at 1. Nothing about this policy can be construed to be the moving force behind an allegation of unconstitutional excessive force or failure to intervene.

Plaintiff alleges that Sheriff Albers "approved and ratified the conduct of Defendant Hansen" because Deputy Hansen "was not counseled or disciplined by Defendant Albers, in his official capacity, regarding any of the events involving Mr. Magne." Am. Compl. ¶¶ 70-71, ECF No. 20. A failure to discipline a deputy, however, does not amount to ratification. *See Bryson*, 627 F.3d at 790 ("[A] municipality will not be found liable under a ratification theory unless a final decisionmaker ratifies an employee's specific unconstitutional actions, as well as the basis for these actions."). Failure to discipline in one specific instance is not "an adequate basis for

municipal liability under *Monell*." *Butler v. City of Norman*, 992 F.2d 1053, 1056 (10th Cir. 1993). After an extensive time allowing for full investigation and complete discovery, there is no evidence of failure to discipline deputies.

Here, on review of the incident, Sheriff Albers did not see a basis for discipline because Hansen's actions were justified. Fact No. 34. The Sheriff's policy, as written, is not facially unconstitutional. A causal connection between a facially constitutional policy and unconstitutional conduct by an officer can be established if a municipality "promulgates a constitutional policy but trains its officers to violate that policy." *Cordova v. Aragon*, 569 F.3d 1183, 1194. After investigation and at the conclusion of discovery, there is no evidence of the Sheriff training Deputy Hansen to violate his constitutionally valid policy.

Even if Sheriff Albers's determination that Deputy Hansen acted in accordance with policy is considered ratification of his conduct, this does not establish that the sheriff's policy was the *cause* of the alleged violation because this determination was not made until after the event occurred. *See Cordova* at 1194 (10th Cir. 2009) ("As for any failure to discipline Officer Aragon, basic principals [sic] of linear time prevent us from seeing how conduct that occurs *after* the alleged violation could have somehow caused that violation."); *Butler v. City of Norman*, 992 F.2d 1053, 1055–56 (10th Cir. 1993) (rejecting argument that a supervisor was liable for an officer's use of excessive force merely because the supervisor did not discipline the officer after the incident).

Plaintiff's claim for municipal liability on a theory of failure to train likewise is unsupported. To show failure to train, a plaintiff must demonstrate that "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of

constitutional rights," that it amounts to deliberate indifference. *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). It is not enough to allege that a particular officer's training was inadequate. *Id.* Further, evidence that an incident "could have been avoided if an officer had had better or more training" does not establish municipal liability. *Id.* at 391. On the other hand, "the existence of a pattern of tortious conduct by inadequately trained employees may tend to show that the lack of proper training… is the 'moving force' behind the plaintiff's injury." *Board of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 408 (1997).

Deputy Hansen received training on use of force three to four times each year from the Sheriff's Office. Fact No. 31. The District Attorney's investigation found that his conduct was reasonable and appropriate. Fact No. 32. The Sheriff's Office likewise determined that Deputy Hansen's conduct was justified. Fact No. 34. Sheriff Albers had no notice that the training provided by the Sheriff's Office posed a clear risk of constitutional violations, as only one other excessive force claim had been filed against detentions since January of 2009. Fact No. 35. That event did not amount to excessive force, but rather deputies' effort to protect the complainant from further attack by a fellow inmate upon arriving back at the jail from federal court. *Id.* There is no evidence of a pattern of unconstitutional conduct to suggest that inadequate or improper training was the moving force behind the constitutional violation alleged.

## V.   CONCLUSION

With discovery concluded, Deputy Hansen requests this Court's determination that qualified immunity requires the entry of summary judgment on the claims against him. He did not fail to intervene and he did not use excessive force. His conduct did not violate plaintiff's constitutional rights and no clearly established case law would have informed him that a

reasonable officer in his position would have known that his conduct would violate plaintiff's rights.

Sheriff Albers requests summary judgment because there was no underlying constitutional violation and in addition, no official custom or policy was a moving force to cause a constitutional violation.

Respectfully submitted,

By  s/*Leslie L. Schluter*
   Leslie L. Schluter
   Sophia A. N. Fernald
   DAGNER | SCHLUTER | MITZNER | WERBER, LLC
   5105 DTC Parkway, Suite 250
   Greenwood Village, CO 80111
   Telephone:  (303) 221-4661
   Fax:  (303) 221-4594
   E-mail:  lschluter@lawincolorado.com

ATTORNEYS FOR DEFENDANTS

## CERTIFICATE OF SERVICE (CM/ECF)

I hereby certify that on October 15, 2020, I electronically filed the foregoing **MOTION FOR SUMMARY JUDGMENT** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

Darold W. Killmer, Esq.                    Charles G. Crosse, Esq.
Reid Allison, Esq.                         Crosse Law, LLC
Killmer Lane & Newman, LLP                 charliecrosse@crosselaw.com
dkillmer@kln-law.com
rallison@kln-law.com

                                           s/*Marisa Showalter*
                                           Paralegal